No. 12-2458

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

LARRY E. HODGE,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana
Case No. 11-cr-7
Hon. Richard Young, United States District Judge,
Presiding

# Brief and Required Short Appendix of
# Defendant-Appellant Larry E. Hodge

FEDERAL PUBLIC DEFENDER
CENTRAL DISTRICT OF ILLINOIS
300 W. Main St.
Urbana IL  61801-2624
Telephone:    (217) 373-0666
Fax:          (217) 373-0667

JONATHAN E. HAWLEY
Chief Federal Public Defender

JOHANNA M. CHRISTIANSEN
Appellate Division Chief

ELISABETH R. POLLOCK
Staff Attorney

Attorneys for Defendant-Appellant,
LARRY E. HODGE

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 12-2458

Short Caption: United States v. Larry Hodge

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement stating the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[X] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3): Larry E. Hodge

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: Jonathan E. Hawley, Johanna Christiansen and ELISABETH R. POLLOCK of the Federal Public Defender for the Central District of Illinois; and Glenn A. Grampp, in the district court.

(3)     If the party or amicus is a corporation:

        i)         Identify all its parent corporations, if any:   None

        ii)        list any publicly held company that owns 10% or more of the party's or amicus' stock: None

====================================================================

Attorney's Signature: /s/ Elisabeth R. Pollock        Date:  March 28, 2013

Attorney's Printed Name: Elisabeth R. Pollock

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes  X  No ____**

       Address: 300 West Main Street, Urbana, IL  61801
       Phone Number: (217) 373-0666
       Fax Number: (217) 373-0667
       E-Mail Address: Elisabeth_Pollock@fd.org

                rev. 01/08 AK

# Table of Contents

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

    Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

    Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

    Other Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues Presented for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Underlying Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    Pre-Trial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    Change of Plea Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.    Presentence Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.    Psychiatric Examination. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.    Sentencing Memoranda. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    Sentencing Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    Testimony of Dr. Louis Cady. . . . . . . . . . . . . . . . . . . . . . . 9

        2.    Additional Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.    Imposition of Sentence. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.      Mr. Hodge's sentence of 1380 months was procedurally
        unreasonable and this case should be remanded for resentencing 16

        A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        B.     The district court committed procedural error when it
               failed to adequately consider Mr. Hodge's proffered
               psychological evidence and other arguments under 18
               U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Compliance with Fed. R. App. P. 32(a)(7)(C). . . . . . . . . . . . . . . 24

# Table of Authorities

### Cases                                                 Page

*Gall v. United States*, 552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Kimbrough v. United States*, 552 U.S. 85 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Booker*, 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Chapman*, 694 F.3d 908 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . 18

*United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005) . . . . . . . . . . . . . . . . 20

*United States v. McIlrath*, 512 F.3d 421 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . 19

*United States v. Miranda*, 505 F.3d 785 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 21

*United States v. Miranda*, 505 F.3d 785 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . 21, 22

*United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . 17

*United States v. Ramirez-Mendoza*, 683 F.3d 771 (7th Cir. 2012) . . . . . . . . . . . . . 16

*United States v. Robertson*, 662 F.3d 871 (7th Cir. 2005) . . . . . . . . . . . . . . . . 17, 20

### Statutes

18 U.S.C. § 2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5

18 U.S.C. § 2251(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 7

18 U.S.C. § 2252(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5

18 U.S.C. § 2252(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 21, 22

18 U.S.C. § 3553(a)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## Other Authorities

Bureau of Justice Statistics, at p. 1, available at
http://bjs.gov/index.cfm?ty=pbdetail&iid=1136 (last viewed on March 27,
2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Center for Sex Offender Management, U.S. Dept. of Justice, "Myths and Facts
About Sex Offenders" (August 2000), available at
http://www.csom.org/pubs/mythsfacts.html (last viewed on March 27,
2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Federal Rule of Appellate Procedure 26.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

R. Karl Hanson & Kelly E. Morton-Bourgon, "The Characteristics of Persistent
Sexual Offenders: A Meta-Analysis of Recidivism Studies," 73 J. Counseling &
Clinical Pscych. 1154 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 3D1.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S.S.G. § 3D1.3(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S.S.G. § 3D1.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S.S.G. § 4B1.5(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# Jurisdictional Statement

1.      The jurisdiction of the United States District Court for the Southern District of Indiana was founded upon 18 U.S.C. 3321.  A grand jury sitting in that district charged Defendant-Appellant Larry E. Hodge (hereinafter referred to as "Mr. Hodge") by indictment with seven counts of production of sexually explicit material involving a minor in violation of 18 U.S.C. § 2251(a) and (e), two counts of conspiracy to produce sexually explicit material involving a minor in violation of 18 U.S.C. § 2251(a), and two counts of distribution of sexually explicit material involving a minor in violation of 18 U.S.C. § 2252(a)(1).  (R. 1)  Mr. Hodge pled guilty to the Indictment on December 8, 2011.  (R. 61)

The jurisdiction of the United States Court of Appeals for the Seventh Circuit is founded upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and is based on the following particulars.

(1)     Date of entry sought to be reviewed: Sentence imposed on May 31, 2012; Judgment in a Criminal Case entered on June 11, 2012 (R. 96; App. 1-7).

(2)     Filing date of motion for a new trial: N / A;

(3)     Disposition of motion and date of entry: N / A;

(4)     Filing date of notice of appeal: June 19, 2012 (R. 104)

## Issues Presented for Review

Whether the district court's imposition of a sentence of 1380 months was procedurally unreasonable because it failed to adequately consider proffered mitigation evidence?

# Statement of the Case[1]

This is a direct appeal in a criminal case.  A grand jury sitting in the Southern District of Indiana charged Mr. Hodge by indictment with seven counts of production of sexually explicit material involving a minor in violation of 18 U.S.C. § 2251(a) and (e), two counts of conspiracy to produce sexually explicit material involving a minor in violation of 18 U.S.C. § 2251(a), and two counts of distribution of sexually explicit material involving a minor in violation of 18 U.S.C. § 2252(a)(1).  (R. 1)  Mr. Hodge entered an initial plea of not guilty to the Indictment on March 18, 2011.  (R. 31)

Mr. Hodge pled guilty to the Indictment on December 8, 2011, with no written plea agreement. (R. 61)  On May 31, 2012, Mr. Hodge was sentenced to a total of 1380 months in prison, consisting of 180 months on Counts 1 through 7, to run consecutively, plus 180 months on Counts 10 and 11, concurrent to each other and to Counts 1 through 7, and 60 months on Counts 12 and 13, consecutive to each other and to Counts 1 through 7.  (R. 96; App. 1-7)  The district court entered its final judgment on June 11, 2012.  (R. 96; App. 1-7).  A timely notice of appeal was filed on June 19, 2012.  (R. 104).

---

[1]The following abbreviations are used herein: Record on Appeal: "R. __"; Appendix: "App. __"; and Presentence Investigation Report: "PSR ¶ __."

## Statement of Facts

A.     Underlying Facts

In November of 2010, Mr. Hodge began sending a series of text messages to a past associate containing sexually explicit images of a child. (PSR ¶¶ 13-14)  The concerned associate contacted a civilian employee at the Vanderburgh County Sheriff's Department, who advised her to maintain communication with Mr. Hodge to see if he would identify the victim.  (PSR ¶ 13)  On November 27, 2010, the associate contacted the Evansville Police Department ("EPD") to report the evidence of child abuse, which prompted the EPD to investigate.  (PSR ¶ 14)

EPD detectives identified Mr. Hodge as the sender of these explicit images, and brought both he and his wife, co-defendant Emma Hodge (hereinafter referred to as "Mrs. Hodge"), to the police station for questioning. (PSR ¶ 14)  During his interview Mr. Hodge admitted to engaging in sexual acts with the minor, identified himself in the images which were sent to his associate, and identified his brother-in-law, co-defendant George Jackson, as someone who received the images.  (PSR ¶ 15)

Subsequently, a search warrant was issued and executed on the Hodge residence to search and seize computer equipment and data storage devices, as well as items that appeared in the photographs such as outfits and sexual objects.  (PSR ¶ 17)  Agents seized, among other things, a Memorex CD-RW

data storage disk that contained the offending material, a Kodak EasyShare digital camera that was used to produce the offending material, an E-Machines desktop computer which Mr. Hodge used to distribute the offending material to Mr. Jackson, and a Motorola cellular telephone which Mr. Hodge used to send the offending material to the associate who initially reported the matter to the EPD.  (PSR ¶¶ 17-18)

B.    Pre-Trial Proceedings

Mr. Hodge, along with Mrs. Hodge and Mr. Jackson, were indicted on various charges arising from the aforementioned conduct.  Specifically, Mr. Hodge was indicted on seven counts of production of sexually explicit material involving a minor in violation of 18 U.S.C. § 2251(a) and (e), two counts of conspiracy to produce sexually explicit material involving a minor in violation of 18 U.S.C. § 2251(a), and two counts of distribution of sexually explicit material involving a minor in violation of 18 U.S.C. § 2252(a)(1).  (R. 1) Mr. Hodge entered an initial plea of not guilty to all charges of the indictment on March 18, 2011.  (R. 31)

1.    Change of Plea Hearing

A change of plea hearing was held on December 8, 2011 where Mr. Hodge pled guilty without a written plea agreement.  (Tr. 12/08/12 pg. 3)  A stipulated factual basis was admitted that had been signed by all parties.  (R.

60)  After accepting the guilty plea, the district court ordered a Presentence

Report prior to sentencing.

2.     Presentence Report

The Probation Department utilized the November 2011 version of the

United States Sentencing Guidelines in calculating Mr. Hodge's sentence.

(PSR ¶ 35)  The Presentence Report grouped Counts 2 and 10, along with

Counts 6 and 11 pursuant to U.S.S.G. § 3D1.2(a) because the conduct involved

the same victim and occurred on the same occasion.  (PSR ¶ 36)  Similarly,

Counts 1 through 7 were grouped pursuant to § 3D1.2(a) because they

involved the same victim and were connected by a common criminal

objective.  (PSR ¶ 36)  Together, Counts 1 through 7 and Counts 2, 10, 6, and

11 constituted Grouping 1.  Counts 12 and 13 were grouped separately

(Grouping 2) pursuant to U.S.S.G. § 3D1.2(b) because the offense level was

based on aggregate harm.  (PSR ¶ 36)

The Guidelines state that for a grouping, the offense level applicable to

the group is the highest total offense level of each of the counts contained in

the group.  U.S.S.G. § 3D1.3(a).  For Grouping 1 (Counts 1 through 7, Counts 6

and 11, Counts 2 and 10), the PSR calculated that the highest adjusted offense

level was 46 (Count 4 - production of child pornography).  (PSR ¶¶ 99, 111)

This was based on a base offense level of 32, with a four-level enhancement

for prepubescence, a two-level enhancement for involvement of a sexual act, a

two-level enhancement for distribution, a four-level enhancement for

portraying sadomasochism, and a two-level enhancement for having the

victim in the care and custody of the defendant.  (PSR ¶¶ 63-72)

For Grouping 2 (Counts 12 and 13), the PSR calculated that the highest

adjusted offense level was 40 based on a base offense level of 22, a two-level

enhancement for prepubescence, a two-level enhancement for distribution, a

four-level enhancement for sadomasochism, a five-level enhancement for a

pattern of activity involving sexual abuse of a minor, a two-level enhancement

for use of a computer, and a three-level enhancement for number of images.

(PSR ¶¶ 100-110)

Pursuant to U.S.S.G. § 3D1.4, the combined adjusted offense level of the

two groupings was 47.  (PSR ¶ 116)  From a level 47, Mr. Hodge received a

three-level reduction for acceptance of responsibility for a total offense level of

43.  However, he then received a five-level enhancement under U.S.S.G. §

4B1.5(b)(1) for qualifying as a repeat dangerous sex offender, resulting in a

total offense level of 49.  (PSR ¶¶ 117-121)  With no criminal history points, the

PSR provided for a guidelines range of life imprisonment.  (PSR ¶ 158)

However, the Guidelines range was limited by the statutory term of

imprisonment which was 15-30 years on Counts 1 through 7, 10 and 11

pursuant to 18 U.S.C. § 2251(e), and 5 to 20 years on Counts 12 and 13

pursuant to 18 U.S.C. § 2252(b)(1).  (PSR ¶ 157)  Therefore, the advisory

guideline range became 3720 months (310 years).  (PSR ¶ 158)  Neither the

Government nor Mr. Hodge filed any objections to the PSR.

    3.    Psychiatric Examination

    On March 28, 2012, Mr. Hodge filed a Motion for Forensic Psychiatric

Re-Evaluation.  (R. 83)  The Motion stated that Dr. Louis B. Cady had

performed an initial psychiatric evaluation on March 9, 2011, and requested

leave to have an updated evaluation done prior to sentencing.  (R. 83)  The

Motion was granted on April 3, 2012, although Dr. Cady's revised report is

dated March 29, 2012.  (R. 84)  A further revised report was presented to the

district court at sentencing on May 31, 2012, dated May 21, 2012.  (Def. Sent.

Exh. A)

    4.    Sentencing Memoranda

    Mr. Hodge filed a Sentencing Memorandum on April 26, 2012, arguing

for a downward departure from the Guidelines.  (Def. Sent. Memo. pg. 1)  The

Memorandum is not referenced in the record because it was filed under seal

due to the inclusion of the updated report authored by Dr. Cady.  In the

Memorandum, Mr. Hodge requested a below-Guidelines sentence based upon

several factors including his acceptance of responsibility, his service to the

community, his past history of sexual abuse and the probable success of sex

offender counseling and treatment.  (Def. Sent. Memo. pp. 1-3)

The Government also filed a Sentencing Memorandum on May 15, 2012.

(R. 92)  In the Memorandum, the Government argued for consecutive

sentences on each of the counts of the Indictment to get as close as possible to

life imprisonment.  (R. 92)  The argument for such a lengthy sentence was

based on the seriousness of the offenses, the damage to the victim, and the

need to avoid sentencing disparities between similar offenders.  (R. 92)

C.    Sentencing Hearing

A sentencing hearing was held on May 31, 2012.  (Tr. 5/31/2012 pg. 2)

The district court stated that both parties had filed sentencing memoranda,

although the memoranda are not reflected on the docket due to the fact that

they were filed under seal.  (Tr. 5/31/2012 pg. 5)  The court also noted that

neither party filed objections to the guidelines calculations contained in the

PSR.  (Tr. 5/31/2012 pg. 5)  Mr. Hodge acknowledged that he had no

objections to the calculations. (Tr. 5/31/2012 pg. 6)

1.    Testimony of Dr. Louis Cady

Before reviewing the PSR, the court allowed Mr. Hodge to call Dr. Louis

Cady, a psychiatrist who conducted an extensive forensic evaluation of the

Defendant on March 9, 2011, and re-evaluations in March and May of 2012.

(Tr. 5/31/2012 pg. 7)  Based on these evaluations, as well as other

corroborating data, Dr. Cady prepared and issued a report detailing his

conclusions regarding the psychological condition of Mr. Hodge on March 29,

9

2012.  (Tr. 5/31/2012 pg. 10)  The report was made part of the record as
Defendant's Sentencing Exhibit A, and Dr. Cady testified as to his findings.
(Tr. 5/31/2012 pp. 7-30)

     Specifically, Dr. Cady testified that Mr. Hodge was himself the victim of
sexual abuse when he was 4 or 5 years old.  (Tr. 5/31/2012 pg. 11)  This
trauma, in combination with a very early exposure to pornography and
extensive physical and emotional abuse, caused Mr. Hodge to become
prematurely sexualized.  (Tr. 5/31/2012 pg. 11-12)  This condition, in Dr.
Cady's opinion, left Mr. Hodge unequipped with normal adult defenses,
executive function, and brain function.  (Tr. 5/31/2012 pg. 11)  In Dr. Cady's
view, these traumas formed the basis of a future pornography addiction, self-
reinforcing behavior, and obsessive personality type, and other psycho-
biological disorders, which all contributed to him committing this crime. (Tr.
5/31/2012 pp. 13, 21, 33)

     Dr. Cady opined that Mr. Hodges had made marked improvements
towards rehabilitation and would be unlikely to reoffend.  (Tr. 5/31/2012 pp.
18, 25-26)  Additionally, Dr. Cady remarked that Mr. Hodge was an ideal
candidate for a prison sex offender group.  (Tr. 5/31/2012 pg. 25)

     Dr. Cady met with Mr. Hodge a second time on May 21, 2012,
prompting him to amend the conclusions in his original report in two
respects.  (Tr. 5/31/2012 pp. 14-18)  First, he retracted his preliminary bi-polar

type II diagnosis after Mr. Hodge exhibited progress with his anger and hypersexual behaviors.  Instead, Dr. Cady concluded, these behaviors were the result of an executive control problem and ADHD.  Second, Dr. Cady found, in contrast to his original conclusions, Mr. Hodge was "vastly less likely to reoffend at this point" because, among other things, he had ceased his hypersexual behavior and began studying scripture. (Tr. 5/31/2012 pp. 19-20)  Accordingly, Dr. Cady concluded that Mr. Hodge was not at risk of being a child predator or inflicting harm on children. (Tr. 5/31/2012 pg. 26)

On cross-examination, Dr. Cady admitted that many defendants understate their contacts with children when undergoing examination.  (Tr. 5/31/2012 pg. 30)  Mr. Hodge admitted sexual contact with four children: two when he was a teenager and two when he was an adult, including the victim in this case.  (Tr. 5/31/2012 pp. 31-32)  According to Dr. Cady, Mr. Hodge had an addiction to child pornography.  (Tr. 5/31/2012 pg. 34)

2.     Additional Evidence

Mr. Hodge called three additional witnesses: his son, Evan Hodge; his father, Larry Hodge; and his mother, Patricia Vordtriede.  (Tr. 5/31/2012 pp. 61, 63, 67)  Each of the witnesses testified as to Mr. Hodge's relationship with them, the fact that he was a good father and son, and that he worked hard.

The Government called Detective Bryan Brown of the Evansville Police Department in aggravation.  (Tr. 5/31/2012 pg. 85)  Detective Brown testified

regarding his investigation of Mr. Hodge.  Specifically, he laid the foundation for admitting copies of all of the images that were found in Mr. Hodge's possession.  Although Mr. Hodge objected to the admission of the photos, the district court overruled it and the evidence was viewed by the court.  (Tr. 5/31/2012 pp. 86-93)  The images produced and admitted into evidence included photos of the victim being tied up, performing oral sex, wearing a dog collar and leash, and having her face near and/or in the buttocks of Mrs. Hodge.  (Tr. 5/31/2012 pp. 94-95)  Mr. Hodge also attempted to engage another adult male to participate in the abuse.  (Tr. 5/31/2012 pg. 97)

      3.     Imposition of Sentence

After the conclusion of the evidence, Mr. Hodge argued for a sentence of 15 years.  (Tr. 5/31/2012 pg. 101)  He argued that he was genuinely remorseful and had cooperated fully from the beginning of the case, giving a voluntary statement and consenting to a search of his residence.  (Tr. 5/31/2012 pp. 98-99)  He also argued that according to Dr. Cady, he had an addiction to pornography which was brought about by mental health issues. (Tr. 5/31/2012 pg. 100)  Finally, it was argued that his life was worth saving and that according to Dr. Cady's report, he could be rehabilitated.  (Tr. 5/31/2012 pp. 100-101)

The Government emphasized the seriousness of the offense and disputed the report filed by Dr. Cady.  (Tr. 5/31/2012 pp. 101-102)  The

Government asked the district court to sentence Mr. Hodge so that he spent the rest of his life in prison, specifically arguing for a sentence of 115 years consisting of the mandatory minimum on each count run consecutively. (Tr. 5/31/2012 pg. 104)

The district court discussed several reasons for the sentence, including the severity of the offense and the effect of the offense on the victim. (Tr. 5/31/2012 pp. 108-109; App. 12-13) The court noted Mr. Hodge's complete lack of criminal history and his full cooperation with authorities, in addition to the need to promote respect for the law and deter the public. (Tr. 5/31/2012 pp. 109-110, 112-113; App. 13-14, 16-17) The district court also noted the need to provide Mr. Hodge with needed educational training, vocational training and other correctional treatment, including sex offender treatment. (Tr. 5/31/2012 pg. 113; App. 17)

Proceeding further, the district court agreed with Dr. Cady's recommendation that Mr. Hodge was addicted to pornography but stated that he was a pedophile, a diagnosis with no evidentiary support that was disputed by Dr. Cady. (Tr. 5/31/2012 pg. 115; App. 19) The court, however, disagreed with Dr. Cady's assessment that Mr. Hodge was not a risk of reoffending. The court then clarified that Mr. Hodge was not a high risk, but whatever risk he did present would be remedied because he would be in prison for the rest of his life. (Tr. 5/31/2012 pp. 115-116; App. 19-20)

13

After the foregoing discussion, the district court sentenced Mr. Hodge to 1380 months imprisonment (115 years) consisting of 180 months on Counts 1 through 7, to run consecutively, plus 180 months on Counts 10 and 11, concurrent to each other and to Counts 1 through 7, and 60 months on Counts 12 and 13, consecutive to each other and to Counts 1 through 7.  (R. 96; App. 1-7)  Mr. Hodge filed a timely notice of appeal on June 19, 2012.  (R. 104)

## Summary of Argument

The district court committed procedural error by imposing a sentence without adequately addressing and considering the § 3553(a) factors as argued by Mr. Hodge.  The district court failed to adequately address and consider Mr. Hodge's low risk of re-offending, sincere desire for treatment, and deep remorse.  The district court also failed to adequately address and consider the horrific sexual abuse that Mr. Hodge endured as a child and the devastating impact of this abuse, and failed to adequately explain why it was disregarding Mr. Hodge's proffered psychiatric evidence.  Based on the foregoing, Mr. Hodge's sentence was procedurally unreasonable and the case should be remanded for resentencing.

# Argument

**I.     Mr. Hodge's sentence of 1380 months was procedurally unreasonable and this case should be remanded for resentencing.**

### A.     Standard of Review

An appellate court reviewing a sentence for reasonableness does so under an abuse of discretion standard.  *United States v. Ramirez-Mendoza*, 683 F.3d 771, 774 (7th Cir. 2012).  First, the court looks to whether or not the sentencing court committed procedural error such as failing to consider the sentencing factors under 18 U.S.C. § 3553(a).  *Id.*  Second, the court looks to whether or not the sentence is substantively unreasonable.  *Id.*

### B.     The district court committed procedural error when it failed to adequately consider Mr. Hodge's proffered psychological evidence and other arguments under 18 U.S.C. § 3553(a).

The Supreme Court has consistently reaffirmed its intention to make sentencing guidelines advisory by requiring district courts to consider the sentencing factors outlined in 18 U.S.C. 3553(a).  *United States v. Booker*, 543 U.S. 220, 261 (2005); *Gall v. United States*, 552 U.S. 38, 51 (2007); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).  The court must impose a sentence sufficient but not greater than necessary to effectuate the purposes of sentencing and shall consider all factors contained in 18 U.S.C. § 3553(a).  *Kimbrough*, 552 U.S. at 101.

A sentence that is sufficient, but not greater than necessary must include consideration of all nonfrivolous sentencing arguments. *United States v. Robertson*, 662 F.3d 871, 880 (7th Cir. 2005). After giving meaningful consideration to these factors, and allowing adversarial testing, the sentencing court must impose a reasonable sentence. *United States v. Mykytiuk*, 415 F.3d 606, 607-08 (7th Cir. 2005). A remand for resentencing is appropriate where the district court failed to consider the statutory factors or failed to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51.

In the present case, the district court did not give adequate consideration to Mr. Hodge's proffered psychiatric evidence. At the sentencing hearing, Dr. Cady testified that Mr. Hodge was himself the victim of sexual abuse when he was 4 or 5 years old. (Tr. 5/31/2012 pg. 11) This trauma, in combination with a very early exposure to pornography and extensive physical and emotional abuse, caused Mr. Hodge to become prematurely sexualized. (Tr. 5/31/2012 pg. 11-12) This condition left Mr. Hodge unequipped with normal adult defenses, executive function, and brain function. (Tr. 5/31/2012 pg. 11) These traumas formed the basis of a future pornography addiction, self-reinforcing behavior, and obsessive personality type, and other psycho-biological disorders, which all contributed to him committing this crime. (Tr. 5/31/2012 pp. 13, 21, 33)

Dr. Cady opined that Mr. Hodges had made marked improvements towards rehabilitation and would be unlikely to reoffend.  (Tr. 5/31/2012 pp. 18, 25-26)  Additionally, Dr. Cady remarked that he was an ideal candidate for a prison sex offender group.  (Tr. 5/31/2012 pg. 25)

The district court agreed with Dr. Cady's assessment that Mr. Hodge was addicted to pornography but stated that he was a pedophile, a diagnosis with no evidentiary support and one which was disputed by Dr. Cady.  (Tr. 5/31/2012 pg. 115; App. 19)  The district court briefly mentioned Dr. Cady's testimony only to disagree with Dr. Cady's assessment that Mr. Hodge was not a risk of reoffending.  The district court then clarified that Mr. Hodge was not a high risk of reoffending, but stated that whatever risk he did present would be remedied because he would be in prison for the rest of his life.  (Tr. 5/31/2012 pp. 115-116; App. 19-20)

District courts are expected to address principal, nonfrivolous arguments in mitigation, but should disregard contentions lacking factual foundation.  *United States v. Chapman*, 694 F.3d 908, 913 (7th Cir. 2012). According to the U.S. Department of Justice, Bureau of Justice Statistics report on recidivism of sex offenders, only 5.3% of sex offenders were rearrested for any type of new sex crime within three years of release from prison.  See Bureau of Justice Statistics, at p. 1, available at http://bjs.gov/index.cfm?ty=pbdetail&iid=1136 (last viewed on March 27,

2013).  Another study, previously relied on by the Seventh Circuit, lists the recidivism rate for all sex offenders as typically 10% to 15%.  R. Karl Hanson & Kelly E. Morton-Bourgon, "The Characteristics of Persistent Sexual Offenders: A Meta-Analysis of Recidivism Studies," 73 J. Counseling & Clinical Pscych. 1154 (2005), cited in *United States v. McIlrath*, 512 F.3d 421, 424 (7th Cir. 2008); see also Center for Sex Offender Management, U.S. Dept. of Justice, "Myths and Facts About Sex Offenders" (August 2000) (The notion that most sex offenders re-offend is a myth), available at http://www.csom.org/pubs/mythsfacts.html (last viewed on March 27, 2013).

Here, one of Mr. Hodge's principal arguments in mitigation was that his tumultuous childhood, marked by extensive sexual and psychological abuse, contributed to the commission of the offense and was evidence of his unlikelihood to reoffend.  (Tr. 5/31/2012 pp. 18, 25-26)  The district court erred by failing to properly address the evidence that Mr. Hodge posed a low risk of re-offending pursuant to 18 U.S.C. § 3553(a)(2)(C).  The district court imposed a sentence of 115 years, fundamentally a life sentence, after barely mentioning Hodge's arguments concerning his risk of re-offending.

The district court did not explain why a 115-year sentence was required to adequately protect the public in light of Mr. Hodge's age, lack of criminal history, sincere desire for treatment, and the strict conditions of supervised

release.  This procedural error requires remand.  *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) ("judge who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight.")

In *United States v. Robertson*, 662 F.3d 871, 879 (7th Cir. 2011), the district court's minimal treatment of the mitigation arguments presented regarding rehabilitation warranted the vacation of judgment and a remand for re-sentencing.  The Robertsons presented evidence in support of their position that their rehabilitation was self-motivated and unusual, and as such merited a sentence lower than the guideline range.  Since it was unclear whether the sentencing court adequately considered this evidence, which was relevant to sentencing, the sentence could not be affirmed.  *Id.* at 880.

In *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005), this Court vacated a defendant's sentence and remanded the case for re-sentencing where the sentencing judge failed to discuss the defendant's argument that his psychiatric illness supported leniency.  Mr. Cunningham had a long history of psychiatric illness and this history was one of the mitigation arguments made in support of his request for a sentence that was lower than the guideline range. *Cunningham*, 429 F.3d at 676-78.  Evidence of Mr. Cunningham's severe psychiatric illnesses was undisputed, yet the sentencing judge failed to mention these psychiatric problems when imposing a sentence.  The court

stated that a "judge who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight." *Id.* at 679; *see also United States v. Miranda*, 505 F.3d 785, 794 (7th Cir. 2007) ("Although the district court mentioned Miranda's mental illness, the court did not specifically address Miranda's principal, non-frivolous arguments based on these section 3553(a) factors, and we therefore are not confident that the court gave these arguments adequate consideration.").

Similarly, in *United States v. Miranda*, 505 F.3d 785 (7th Cir. 2007), the sentencing court did not give sufficient treatment to Mr. Miranda's nonfrivolous arguments based on his history of severe mental illness. Miranda had been diagnosed with schizoaffective disorder and a report detailing the findings of the psychiatrist who examined him was submitted in support of his sentencing request. *Id.* at 788. His psychiatric history was uncontested by the government. The sentencing judge commented on the report and also acknowledged that he respected the expertise of and testimony given by the psychiatrist. He also recognized that Miranda's psychiatrist believed Miranda's mental health was a factor that contributed to the commission of the crime. *Id.* at 790. In spite of these comments, this Court found that little or no attention was given to Mr. Miranda's argument requesting leniency based on his psychiatric history. Due to the failure to

adequately address this non-frivolous argument, the judgment was vacated and the case remanded for re-sentencing.  *Id.* at 796.

Arguments based on a defendant's history of mental illness are relevant under 18 USC § 3553(a) and adequate review must be given to the evidence presented in support of a more lenient sentence based on this factor.  *Miranda*, 505 F.3d at 792.  In the present case, Mr. Hodge presented evidence, through a psychiatrist, that his history of extensive sexual and emotional abuse contributed to his offense and was remediable, therefore decreasing his risk of recidivism.  The district court's barebones treatment of the psychological testimony constitutes procedural unreasonableness and requires that the case be remanded for resentencing.

## Conclusion

Based on the foregoing, Mr. Hodge respectfully requests that this Court reverse the sentence handed down by the district court and remand the case for resentencing.

Respectfully submitted,

JONATHAN E. HAWLEY
Chief Federal Public Defender

JOHANNA M. CHRISTIANSEN
Appellate Division Chief

By:    s/ Elisabeth R. Pollock
ELISABETH R. POLLOCK
Staff Attorney
Federal Public Defender's Office
300 W. Main St.
Urbana IL  61801-2624
Tel. (217) 373-0666
Fax (217) 373-0667

Attorneys for Defendant-Appellant,
LARRY E. HODGE

## Certificate of Compliance with Fed. R. App. P. 32(a)(7)(C)

The undersigned certifies that this brief complies with the volume

limitations of Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit

Rule 32 in that it contains 4,515 words and 431 lines of text as shown by

WordPerfect X6 used in preparing this brief.

s/ Elisabeth R. Pollock
ELISABETH R. POLLOCK
Staff Attorney

Dated:      March 28, 2013

No. 12-2458

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

LARRY E. HODGE,
Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Indiana
Case No. 11-cr-7
Hon. Richard Young, United States District Judge,
Presiding

_____

**Required Short Appendix of
Defendant-Appellant Larry E. Hodge**

_____

FEDERAL PUBLIC DEFENDER
CENTRAL DISTRICT OF ILLINOIS
300 W. Main St.
Urbana IL  61801-2624
Telephone:   (217) 373-0666
Fax:         (217) 373-0667

JONATHAN E. HAWLEY
Acting Federal Public Defender

JOHANNA M. CHRISTIANSEN
Appellate Division Chief

ELISABETH R. POLLOCK
Staff Attorney

Attorneys for Defendant-
Appellant, Larry E. Hodge

## Certificate of Compliance with Circuit Rule 30

The undersigned counsel for Defendant-Appellant hereby states that all

the materials required by Circuit Rule 30(a) and 30(b) are included in the

Appendix to this brief.

BY:   <u>s/ Elisabeth R. Pollock</u>
                ELISABETH R. POLLOCK
                Staff Attorney

Date:  March 28, 2013

## Appendix Table of Contents

Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appx. ii

Judgment in a Criminal Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appx. 1-7

Sentencing Hearing tr. 5/31/2012 (excerpts, pp. 1, 105-116). . . . . . . Appx. 8-20

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

| SOUTHERN | District of | INDIANA |
|---|---|---|

UNITED STATES OF AMERICA

**V.**

LARRY EVERETT HODGE

### JUDGMENT IN A CRIMINAL CASE

Case Number:     3:11CR00007-001

USM Number:     09971-028

Glenn A. Grampp
_____
Defendant's Attorney

## THE DEFENDANT:

**X** pleaded guilty to count(s)     1, 2, 3, 4, 5, 6, 7, 10, 11, 12, and 13

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count(s) |
|---|---|---|---|
| 18 U.S.C. § 2251(a) | Production of Child Pornography | 4/3/10 | 1 |
| 18 U.S.C. § 2251(a) | Production of Child Pornography | 4/15/10 | 2 |
| 18 U.S.C. § 2251(a) | Production of Child Pornography | 4/15/10 | 3 |
| 18 U.S.C. § 2251(a) | Production of Child Pornography | 5/20/10 | 4 |
| 18 U.S.C. § 2251(a) | Production of Child Pornography | 10/4/10 | 5 |

The defendant is sentenced as provided in pages 2 through     6     of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

5/31/2012
_____
Date of Imposition of Judgment

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

6/11/2012
_____
Date

**A CERTIFIED TRUE COPY**
Laura A. Briggs, Clerk
U.S. District Court
Southern District of Indiana

By _Nina M. Doyle_
Deputy Clerk

AO 245B (Rev. 09/11) Judgment in a Criminal Case
Sheet 1A

Judgment — Page ___2___ of ___6___

DEFENDANT:          LARRY EVERETT HODGE
CASE NUMBER:        3:11CR00007-001

### ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count(s) |
|---|---|---|---|
| 18 U.S.C. § 2251(a) | Production of Child Pornography | 10/9/10 | 6 |
| 18 U.S.C. § 2251(a) | Production of Child Pornography | 11/9/10 | 7 |
| 18 U.S.C. § 2251(a) | Conspiracy to Produce Child Pornography | 4/15/10 | 10 |
| 18 U.S.C. § 2251(a) | Conspiracy to Produce Child Pornography | 10/9/10 | 11 |
| 18 U.S.C. § 2252(a)(1) | Distribution of Child Pornography | 11/27/10 | 12 |
| 18 U.S.C. § 2252(a)(1) | Distribution of Child Pornography | 11/27/10 | 13 |

AO 245B     (Rev. 09/11) Judgment in Criminal Case
            Sheet 2 — Imprisonment

|  |  |  |
|---|---|---|
| Judgment — Page | 3 | of | 6 |

DEFENDANT:        LARRY EVERETT HODGE
CASE NUMBER:      3:11CR00007-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:       1380 months

180 months on each of Counts 1, 2, 3, 4, 5, 6, 7, all consecutive; plus 180 months on each of Counts 10 and 11, concurrent to each other, and concurrent to Counts 1, 2,, 3, 4, 5, 6, and 7; plus 60 months on each of Counts 12 and 13, consecutive to each other, and consecutive to Counts 1, 2, 3, 4, 5, 6, and 7.

**X**   The court makes the following recommendations to the Bureau of Prisons:

That the defendant be designated to a facility where he can participate in a sex offender treatment program and be as close to southwestern Indiana as possible.

**X**   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

☐   at _____   ☐ a.m.   ☐ p.m.   on _____ .

☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐   before 2 p.m. on _____ .

☐   as notified by the United States Marshal.

☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Appx. 3

AO 245B     (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | | Judgment—Page | 4 | of | 6 |

DEFENDANT:     LARRY EVERETT HODGE
CASE          3:11CR00007-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a       Life, each count, concurrent

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

**X**   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

**X**   The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

**X**   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.  (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant shall comply with the standard conditions that  have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal  activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3C — Supervised Release

Judgment—Page   4.01   of   6

DEFENDANT:      LARRY EVERETT HODGE
CASE NUMBER:    3:11CR00007-001

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall pay any fine that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.

2.  The defendant shall provide the probation officer access to any requested financial information.

3.  The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer.

4.  The defendant shall participate in a substance abuse treatment program at the direction of the probation officer, which may include no more than eight drug tests per month.  The defendant shall abstain from the use of all intoxicants, including alcohol, while participating in a substance abuse treatment program.  The defendant is responsible for paying a portion of the fees of substance abuse testing and/or treatment.

5.  The defendant shall submit to the search (with the assistance of other law enforcement as necessary) of his person, vehicle, office/business, residence and property, including computer systems and peripheral devices.  The defendant shall submit to the seizure of contraband found.  The defendant shall warn other occupants the premises may be subject to searches.

6.  The defendant shall not possess/use a computer unless he agrees to comply with the Computer Restriction and Monitoring Program at the direction of the probation officer.  Monitoring will occur on a random or regular basis.  The defendant shall advise the probation office of all computers available to him for use.  Any computer or Internet-enabled device the defendant is found to have used and has not disclosed shall be considered contraband and may be confiscated by the probation officer.  The defendant shall warn other occupants of the existence of the monitoring software placed on his computer.

7.  The defendant shall not possess any pornography, erotica or nude images.  Any such material found in the defendant's possession shall be considered contraband and may be confiscated by the probation officer.

8.  The defendant shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer.  The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer.

9.  The defendant shall not have any unsupervised contact with any minor child, unless the contact has been disclosed to and approved by the probation officer.  In determining whether to approve such contacts involving members of the defendant's family, the probation officer shall determine if the defendant has notified the persons having custody of any such minors about his conviction in this case and the fact that he is under supervision.  If this notification has been made, and if the person having custody consents to the contact then this condition is not intended to prevent approval of the contact.

10. The defendant shall register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school.

  Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

  These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed)

_____      _____
Defendant                            Date

_____      _____
U.S. Probation Officer/Designated Witness      Date

Appx. 5

AO 245B     (Rev. 09/11) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page __5__ of __6__

DEFENDANT:        LARRY EVERETT HODGE
CASE NUMBER:      3:11CR00007-001

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  1,100.00 | $  1,000.00 | $ |

☐   The determination of restitution is deferred until _____.  An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐   The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |

| **TOTALS** | $ _____ | $ _____ |  |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

The defendant shall pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

**X**   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

**X**   the interest requirement is waived for the   **X**   fine   ☐   restitution.

☐   the interest requirement for the   ☐   fine   ☐   restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Appx. 6

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page  6  of  6

DEFENDANT:         LARRY EVERETT HODGE
CASE NUMBER:       3:11CR00007-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  ☐  Lump sum payment of $ _____ due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ G below; or

**B**  **X**  Payment to begin immediately (may be combined with   ☐ C,       ☐ D, or    ☐ G below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the restitution ordered herein and the Court may order such payment in the future.

**G**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

| Defendant Name | Case Number | Joint & Several Amount |
| --- | --- | --- |
| | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

**X**  The defendant shall forfeit the defendant's interest in the following property to the United States:
all items seized from his residence during this investigation

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

Appx. 7

1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF INDIANA
2                  EVANSVILLE DIVISION


3


4  UNITED STATES OF AMERICA,      )
                                  )
5          Plaintiff,             )
                                  )
6      vs.                        )  3:11-cr-0007-001
                                  )  Evansville, Indiana
7  LARRY EVERETT HODGE,           )  May 31, 2012
                                  )
8          Defendant.             )


9


10


11           TRANSCRIPT OF SENTENCING HEARING


12


13        BEFORE THE HONORABLE RICHARD L. YOUNG,


14        UNITED STATES DISTRICT COURT JUDGE


15


16 Court Reporter:          Judy Farris Mason, CSR
                           Official Court Reporter
17                         United States District Court
                           318 Federal Building
18                         Evansville, Indiana  47708
                           Tel.  (812)459-9805
19                         Email: Judy_Mason@insd.uscourts.gov


20


21                Proceedings reported by stenotype.
22      Transcript produced by computer-aided transcription.


23


24


25

1   case.

2      And at a minimum we would ask the Court to impose that

3   sentence.  That is a big departure from the guidelines, and I

4   think rather than a big departure below, this defendant simply,

5   unfortunately, for whatever reason -- and he's given us some

6   reasons why he has been programmed this way -- he simply

7   represents too great of a threat to others to go substantially

8   below the guidelines to a sentence where he could get out and

9   he could potentially harm other people.

10      Dr. Cady said he's under control right now.  Well, it's

11  because he's in prison; he doesn't have access to pornography

12  and the temptations that would certainly be available, no

13  matter what level of supervision he would be under, if he was

14  ever outside an imprisonment setting.

15      The guidelines themselves recommend a 310-year sentence.

16  The nature and circumstances of the offense are as extreme as I

17  think the Court would ever expect to see in a case like this,

18  short of physically -- seriously physically injuring the

19  victim.  His past actions demonstrate that he is a contact

20  offender for individuals apart from only this victim.  In his

21  original report, Dr. Cady said he would likely reoffend.

22      There is a huge problem with the collection, distribution,

23  and production of child pornography, and this sentence of an

24  individual is an extreme example of some of the worst type of

25  child pornography that can be produced.  A severe sentence of

1  that individual hopefully and the Court should expect that it

2  would send a message to warn others not to engage in this

3  activity in the future as a deterrent for individuals

4  considering what the risks are to do this to a child.

5      Mr. Grampp suggests a sentence of no more than 15 years.

6  If the Court would review some of the other sentences that have

7  been imposed in this district, which are set forth in the

8  government's memorandum on pages 10 and 11, that would just be

9  a substantial departure below what other Courts and even this

10  Court in another case has done for an individual who produced

11  child pornography.

12      And this particular -- these particular images are -- it's

13  hard to imagine anything worse.  And the sentences in general

14  as set forth on pages 10 and 11 have involved a consecutive

15  sentence for each count of production and a consecutive

16  sentence for the other offenses, like possession or in this

17  case distribution of the images.

18      In weighing all these considerations, Your Honor, the

19  government would urge the Court to impose a sentence consistent

20  with the guidelines or, if departing from the guidelines, not

21  below the bottom level that we suggested on page six of the

22  memorandum, which would be 115 years, which would be 15 years

23  for each separate production and five years for each

24  distribution.

25      This is an individual that poses a continuing risk to the

1  public if he's ever released and outside of a prison setting in

2  the future, and the Court has to sentence the individual that

3  it has in front of it with an eye to how to protect the public.

4  And given what we know, this defendant is driven by -- and what

5  he's done when he's given the opportunity, he had the

6  opportunity to groom this victim and abuse her the way he did.

7  On another occasion when there was an opportunity, he touched

8  the child that his wife was babysitting.  There was absolutely

9  a well-documented risk even on just one sexual history of a

10  person that is a predator against children and who has a strong

11  interest in sadistic images, images of sadistic abuse of a

12  child, and he poses a huge risk.

13      For that reason, we'd ask the Court to impose a sentence

14  that is sufficient to detain him in custody for the balance of

15  his life.

16          THE COURT:  Thank you, Mr. Shellenbarger.

17      Mr. Grampp, any further comment?

18          (Counsel and defendant approach the podium)

19          THE COURT:  Anything further?

20          MR. GRAMPP:  Nothing.

21          THE COURT:  All right.  The Court has consulted with

22  the advisory guidelines and, as Mr. Grampp indicated and

23  Mr. Shellenbarger has indicated, the guidelines are 310 years

24  as a guideline range.  And the Court now must consider the

25  factors set forth in 18 United States Code Section 3553.

1    Factors to be considered in imposing a sentence:  The Court

2  shall impose a sentence that is sufficient but not greater than

3  necessary to comply with the purposes set forth in the code.

4  The Court shall consider the nature and circumstances of the

5  offense and history and characteristics of the defendant.  Of

6  course, the nature and circumstances, we've gone over that

7  through the presentence investigation report and also the

8  testimony and the evidence that we've seen here today.

9    The defendant has admitted he conducted seven separate

10  digital photography sessions with his niece, a female who was

11  born in 2002, less than nine years old at the time.  These

12  digital photography sessions depicted the niece, the minor

13  child, engaged in sexually explicit conduct, sexually

14  suggestive poses to severe physical sexual abuse, sadistic

15  poses, tying her up, putting a dog leash on her, having her

16  perform oral sex on you.

17    These photos in the exhibits, I believe it's Exhibit 3,

18  are -- it's hard to find a word to describe them.  Obviously,

19  you've seen them, Mr. Hodge, but they are despicable,

20  reprehensible.  It's disturbing to even view them for the brief

21  time that I did.  But this is something that happened; and, as

22  you've said in your statement, it can't be erased.

23    And then the defendant conspired, recruited his wife, Emma

24  Hodge, to produce two photography sessions depicting his wife

25  engaging in sexually explicit conduct with the child.  And

1    then, of course, to make this a lifetime -- make the victim a

2    lifetime victim, you distributed it over the Internet and over

3    cellphones.  And, of course, as we all know, that never

4    disappears.  Those depictions will be out there in the

5    cyberspace forever.

6        When the victim is your age or older, those photos are

7    going to be out there, the ones that you distributed.  And, of

8    course, that not only makes her a victim of what you did to

9    her, but it makes her a lifetime victim.  She's always going to

10   have in the back of her mind -- I don't care how much therapy

11   she gets; how could you forget this, that it's out there

12   somewhere?  And who knows who's sitting in a basement or a room

13   somewhere viewing these pictures?  That's something about the

14   Internet that many people forget and don't think about.

15       Right, Mr. Hodge?

16           THE DEFENDANT:  I know.

17           THE COURT:  Yes, they never disappear.

18           THE DEFENDANT:  No.

19           THE COURT:  And the evidence and the memories may very

20   well be -- although those memories may dim after a period of

21   time, they will be refreshed every time that she thinks about

22   cyberspace photos of her or someone tells her that they saw her

23   on the Internet as a child.  Very disturbing.

24       History and characteristics of the defendant:  The

25   defendant has no prior criminal history.  He cooperated fully

1  with the authorities once he was arrested.  He has accepted his

2  responsibility for his criminal acts.  According to the

3  information in the presentence report and his testimony from

4  his father, he's a hard worker, worked for 30 years in the lawn

5  care business.

6        He has reported abuse as a young child, and Dr. Cady's

7  report reflects that, and that may have been the genesis of his

8  addiction to pornography.  He also viewed pornography he found

9  at his grandmother's house, which apparently belonged to his

10  uncle.

11        The characteristic that we've heard here of your being an

12  uncle who adored this child, certainly that's a good thing;

13  family members take care of each other and love each other.

14  But the abuse of that trust that you generated in that

15  relationship is astounding.  This would have never happened had

16  not that trusting relationship been there.  And here's an

17  eight-year-old trusting her uncle to not do anything bad to

18  her.

19            THE DEFENDANT:  I know.

20            THE COURT:  And you did one of the most horrifying,

21  degrading things to a young child that anybody can think of.

22  It may not have been a physical injury to her -- and thank God

23  for you -- but the mental injury here -- no one will ever know,

24  but I think we can safely assume that there will be and is a

25  significant mental injury that will continue throughout her

1  life in going through this.

2      I know it's hard for someone who's eight years old to

3  understand what's going on about them, but I think if we all

4  think back to when we were eight or nine years old, we can't

5  remember everything that went on in our lives, but we can

6  certainly remember horrific things that went on in our lives.

7      My father died when I was 14.  I can remember that like it

8  was yesterday --

9          THE DEFENDANT:  Right.

10          THE COURT:  -- but I can't remember a lot of other

11  things that happened when I was 14.  So those horrific things

12  stick out, and they're not forgotten.  So the mental injury is

13  certainly significant here.

14      The need for the sentence imposed to reflect the

15  seriousness of the offense, promote respect for the law, and

16  provide just punishment for the offense:  I don't think I need

17  to comment much on the seriousness of the offense other than

18  outside of murder, taking a human life, I don't think there's

19  much more of a serious offense.  And I think you can see how

20  the Congress, our national legislature, has viewed this type of

21  criminal activity.  You can see the statutory minimum sentence

22  is significant, 15 years.  And, of course, the Congress

23  approves the sentencing guidelines, as well, and the sentencing

24  guidelines are extreme here in terms of 310 years.

25      I mean, Mr. Grampp is right; it doesn't make a whole lot of

1  sense that the guidelines can't recommend life here, but 310

2  years certainly would be a life sentence here.  So I think the

3  statutory sentence and the advisory guidelines here reflect

4  what our national legislature has -- how they have viewed this

5  particular criminal activity.

6      And I've gone over some of that about the distribution

7  remains throughout history and the rest of our lives being in

8  the cyberspace and, obviously, of course, the trauma that

9  happens to these young children who are involved in child

10  pornography.  Of course, if there wasn't a demand for it, it

11  wouldn't happen.

12          THE DEFENDANT:  Yeah.

13          THE COURT:  And someone with your addictions, of

14  course, and others who are out there -- and there's too many of

15  these folks out here who have this type of addiction that don't

16  seek help.  And, of course, that demand then causes others to

17  become involved in this type of criminal activity, and many

18  times it's by force or coercion.  So, indeed, it's a serious

19  offense, and I don't think I have to spend much more time on

20  that.

21      Promote respect for the law -- of course, these laws have

22  to be respected -- and provide just punishment for the offense:

23  The sentence needs to be a fair sentence, and the goals of

24  sentencing are just punishment but also a deterrence to others

25  who are contemplating committing similar criminal activity.

1   And that sentence also must protect the public from further

2   crimes of the defendant.

3       So as long as deterrence is involved, we want to make sure

4   that others who are contemplating committing similar criminal

5   activity understand the punishment upon conviction here.  As

6   Mr. Grampp or Mr. Shellenbarger indicated earlier, any sentence

7   I give you, considering your present age, is pretty much a life

8   sentence.  So others have to be -- part of my sentence then,

9   being fair, has to be a signal to others that the law is

10  serious about this type of criminal activity, and the penalties

11  can be harsh.  And hopefully they will think about that before

12  they engage in this type of criminal activity.

13      Protect the public from further crimes of the defendant:

14  This sentence here, as I indicated, is -- the minimum sentence

15  would be pretty much a life sentence.  I doubt there's much

16  risk of further crimes of you if you ever are released from

17  prison.

18      Provide the defendant with needed educational, vocational

19  training, medical care, or other correctional treatment in the

20  most effective manner:  Mr. Grampp has indicated and Dr. Cady

21  indicated, as well, that you're probably a prime candidate for

22  the sexual offender treatment program offered by the Bureau of

23  Prisons.  Certainly, the Court will recommend that, and I

24  believe that is in terms of medical care and psychological

25  care.

1      And, of course, the Court needs to avoid unwarranted

2  sentence disparities among defendants with similar records who

3  have been found guilty of similar conduct, and

4  Mr. Shellenbarger has indicated in his comments, the Court in

5  this district will find that each incident of production of

6  child pornography and sexually explicit material is an offense

7  each and of itself.  And then, of course, the distribution is a

8  completely separate offense, as well.  And in this district

9  those convictions and sentences have been run concurrent.

10     I do believe that 310 months would be an extreme sentence

11  here and not a fair sentence, and the Court will not impose

12  that sentence.

13     So the Court now has consulted with the advisory

14  guidelines, considered factors set forth in 3553, and is now

15  ready to impose judgment and sentence.

16     Do you know of any legal reason, Mr. Grampp, why the Court

17  cannot impose judgment and sentence at this time?

18          MR. GRAMPP:  No, sir.

19          THE COURT:  All right.  Mr. Shellenbarger?

20          MR. SHELLENBARGER:  No, Your Honor.

21     I did want to note to the Court that the victim's parents

22  are present in court and elected not to make a statement today

23  but to proceed only with the statement that was submitted in

24  the presentence report.

25          THE COURT:  All right.  Thank you.

1      I did mention earlier that there was a victim impact

2  statement submitted.  I have read that, but I appreciate your

3  bringing to my attention, Mr. Shellenbarger, that the victim's

4  parents are indeed here in court today.  And certainly they

5  understand they have a right to make a statement --

6           MR. SHELLENBARGER:  Yes, Your Honor.

7           THE COURT:  -- and they've decided not to?

8           MR. SHELLENBARGER:  Yes, Your Honor.

9           THE COURT:  All right.  Very good.

10      All right.  The Court enters judgment of conviction on

11  Counts 1 through 7, production of child pornography, violation

12  of 18 U.S. Code Section 2251(a); the Court enters judgment and

13  conviction on Counts 10 and 11, conspiracy to produce child

14  pornography, a violation of 18 U.S. Code Section 2251(a), and

15  the Court enters judgment and conviction on Counts 12 through

16  13, distribution of child pornography, a violation of 18 U.S.

17  Code Section 2252(a)(1).

18      As I indicated, I believe, after reviewing Dr. Cady's

19  report, that the defendant does have an addiction to

20  pornography.  He's a pedophile.  He does have ADHD, which

21  contributed all to his criminal conduct here, and hopefully

22  he'll receive treatment for that while he's in the Bureau of

23  Prisons.

24      I do not agree with Dr. Cady's assessment that the

25  defendant will not be a significant -- would not be a risk,

1  although as I indicated in my 3553 exam analysis, I don't

2  believe he's a high risk, but he's going to be in prison for

3  most of the rest of his life, and that should take care of that

4  risk.

5      Defendant also revealed in Dr. Cady's report that he had

6  sexually abused three other children in his lifetime, including

7  both of his half sisters, who were six to seven at the time,

8  and an unknown female child who was under his wife's care as a

9  babysitter.  This is all very serious conduct, and, as I

10  indicated, hopefully you will get treatment for this addiction

11  that you have.

12      Pursuant to the Sentencing Reform Act of 1984, it's the

13  judgment of the Court the defendant, Larry Everett Hodge, is

14  hereby committed to the custody of the Bureau of Prisons to be

15  imprisoned for a term of 180 months on Counts 1 through 7.

16  That would be 15 years on each count.  That would be

17  consecutive.

18      The defendant is sentenced on Counts 10 and 11 to 15 years

19  on each count, concurrent to each other and concurrent with

20  Counts 1 through 7.  These are the conspiracy counts with Emma

21  Dell Hodge, and they reflect the same photo sessions in Counts,

22  I believe, 6 and 7.

23      The Court sentences the defendant on Counts 12 and 13 to a

24  term of 60 months on each count, consecutive, and consecutive

25  to Counts 1 through 7.

No. 12-2458

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

LARRY E. HODGE,
Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Indiana
Case No. 11-cr-7
Hon. Richard Young, United States District Judge,
Presiding

---

## Notice of Filing and Proof of Service

TO:    Mr. Gino Agnello, Clerk, United States Court of Appeals, 219 S. Dearborn St., Ste. 2722, Chicago, IL 60604-1874

       Mr. Larry E. Hodge, USP Tuscon, United States Penitentiary, PO Box 24550, Tuscon, Arizona 85734

       Mr. Todd Shellenbarger, US Attorney's Office, 101 NW Martin Luther King Blvd, Suite 250, Evansville, IN 47708

       I certify that on March 28, 2013, I electronically filed the Brief and Argument of Defendant-Appellant with the Clerk of the United States Court of Appeals for the Seventh Circuit by CM/ECF, which will serve participants in this case who are registered system users. I further certify that some participants do not use CM/ECF. I have mailed the document to those participants by First-Class Mail, or dispatched it to a third-party commercial carrier for delivery within 3 calendar days.

BY:    s/ Elisabeth R. Pollock
           ELISABETH R. POLLOCK
           Staff Attorney
           Federal Public Defender's Office
           300 W. Main St.
           Urbana IL 61801-2624
           Tel. (217) 373-0666
           Fax (217) 373-0667